AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br>Raymond J. KIRK<br>13968 State Route 7 South<br>Gallipolis, Ohio 45631<br><br>*Defendant(s)* | ) ) ) ) ) ) ) Case No. 2:21-mj-316 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 9, 2021__ in the county of __Gallia__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 922(g)(1) | Possession of a Firearm by a Previously Convicted Felon |

This criminal complaint is based on these facts:

See attached affidavit, which is incorporated herein by reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

E. Travis Aaron, FBI SA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __May 5, 2021__

_____
Kimberly A. Jolson
United States Magistrate Judge

City and state: __Columbus, Ohio__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**In the Matter of the Criminal Complaint:**
**United States of America**
    v.
**Raymond J. KIRK**
**13968 State Route 7 South**
**Gallipolis, Ohio 45631**

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

  I, E. Travis Aaron, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows:

  1. I, Special Agent E. Travis Aaron (Your Affiant), make this Affidavit in support of a criminal complaint to arrest for violation of Title 18, United States Code § 922(g)(1), that is, possession of a firearm by an individual previously convicted in any court of a crime punishable by imprisonment for a term exceeding one year. Because this Affidavit is being submitted for the limited purpose of securing an arrest warrant, Your Affiant did not include each and every fact known concerning this investigation. Your Affiant did not withhold any information or evidence that would negate probable cause. Your Affiant set forth only the facts that are believed to be necessary to establish probable cause that Raymond J. KIRK (KIRK) committed the violation listed above.

  2. I am a Special Agent with the FBI assigned to the Cincinnati Division and I have been a Special Agent since September 2018. Prior to joining the FBI, I worked as a law enforcement officer in varying capacities. I began my law enforcement career in 2012 as a patrol officer in Coulterville, Illinois, where I spent three years working on all case work assigned to my jurisdiction. I transferred to Red Bud, Illinois Police Department in 2015, where I continued as a patrol officer. I helped create an educational program for narcotics that was presented to the local school district, along with certification as an Active Shooter Instructor by 4E. I transferred to Southern Illinois University Edwardsville in 2016 as a patrol officer. I was promoted to a Field Training Officer for the department prior to leaving to accept a position as a Special Agent for the FBI in 2018. While performing my duties as a Special Agent, I have participated in various investigations involving firearms-related offenses and have executed numerous search warrants, including those involving searches and seizures related to firearms. I have also received both formal and informal training in the detection and investigation of various types of offenses, including firearms offenses, drug-trafficking offenses, computer-related offenses, and crimes against children. As part of my duties as a Special Agent, I investigate federal offenses involving all manner of criminal violations, including crimes related to firearms, narcotics, criminal child exploitation, and child pornography, among others.

1

### A. KIRK's Criminal History (Previous 15 Years)

3. In approximately July of 2006, KIRK was convicted for Felony Voluntary Manslaughter in the State of Ohio. In or about September of 2008, KIRK was found in violation of his felony parole violation.

4. In approximately August of 2014, KIRK was convicted for Felony Larceny After Breaking/Entering, Possession of a Firearm by a Felon, and Assault of a Handicapped Person. All of these convictions were in the State of North Carolina.

5. In approximately April of 2015, KIRK was convicted for Possession of a Firearm by a Felon, Manufacture of Schedule VI, and Simple Assault of a Handicapped Person. All of these convictions were in the State of North Carolina.

6. In approximately February of 2016, KIRK was convicted for Possession of a Weapon of Mass Destruction. This conviction was in the State of North Carolina.

### B. KIRK's arrest by Local Law Enforcement

7. On or about April 9, 2021, local law enforcement responded to a disturbance at 1289 Clay Capel Road, Gallipolis, Ohio 45631 (referred to in this Affidavit as the Clay Capel property). After completion of the investigation by local law enforcement, KIRK was arrested near an unoccupied trailer on the Clay Capel property for aggravated menacing.

8. By way of background, and as described in further detail below, the investigation has demonstrated that KIRK worked in property maintenance for the owner of three trailers in or around the area of 1289 Clay Capel Road in Gallipolis. One of the trailers was unoccupied; KIRK had access to this unoccupied trailer, and for some amount of time prior to his arrest, had been accessing the unoccupied trailer for his personal use. Moreover, the investigation has indicated that KIRK had been seen possessing a firearm on the Clay Capel property. Prior to his arrest, KIRK had been seen shooting a firearm at beer cans, on multiple occasions, on the Clay Capel property. On or about the date in question in this Affidavit, April 9, 2021, KIRK got into an argument with one of the tenants of the trailers on the Clay Capel property. Multiple individuals saw KIRK possess a firearm during the argument, and saw or heard KIRK discharge the firearm multiple times during the argument with the tenant. Following the argument and KIRK's discharge of the firearm, KIRK was arrested at the Clay Capel property by local authorities in Gallia County on or about April 9, 2021.

### C. Subsequent investigation demonstrates that KIRK is a prior convicted felon who possessed a firearm on or about April 9, 2021, all in violation of 18 U.S.C. § 922(g)(1).

9. After KIRK's arrest on or about April 9, 2021, Your Affiant and local law enforcement officers conducted subsequent investigation into KIRK's activities on or about April 9, 2021, to include several interviews and the review of several jail calls made by KIRK. During the course of the investigation after KIRK's arrest, local law enforcement identified and/or interviewed three confidential sources (CHS1 through CHS3), each of whom was present at the Clay Capel property the day KIRK was arrested. Moreover, based upon subsequent investigation, law enforcement officials identified multiple firearm shell casings found in the area of CHS3's trailer, which is the near area of where KIRK is believed to have discharged the firearm on or

about April 9, 2021.

10. On or about April 14, 2021, local law enforcement obtained written consent from the owner of the Clay Capel property to conduct a search of the unoccupied trailer where KIRK was arrested on or about April 9, 2021. Upon completion of the search, local law enforcement recovered a 9mm handgun found inside of the residence. The firearm is more specifically described as a Jiminez Arms-manufactured, model J.A. Nine, 9mm semi-automatic pistol, which is dark charcoal in color. Subsequent investigation has indicated that this firearm was manufactured outside the State of Ohio. As a result of the information obtained from the jail calls and evidence obtained by local law enforcement, KIRK was issued a complaint for a state charge of Possession of a Weapon by a Felon.

11. On or about April 20, 2021, Your Affiant interviewed CHS1 to obtain additional details about the event that took place with KIRK on or about April 9, 2021. CHS1 informed law enforcement that KIRK was standing outside of CHS1's residence, while several children were also in the yard playing. KIRK approached CHS1's residence in the early afternoon and advised he was there to fix a water leak under the residence. Upon further discussion, KIRK and CHS1's conversation became more volatile, and an argument ensued. As the argument became more tense, CHS1 advised KIRK that he/she was calling 911. CHS 2 overheard the yelling and came outside to tell KIRK he needed to stop yelling. While CHS1 was dialing 911, he/she observed KIRK walk to CHS3's yard and place a beer can on the ground. CHS1 then saw KIRK remove a handgun from his person. Upon removal of the handgun, KIRK fired four shots into the ground in front of him. CHS1 then observed KIRK point the gun in his/her direction, point it away, fire a shot, and then point the gun back at his/her direction. KIRK then walked down to the unoccupied residence on which he was doing repairs and to which he had access. KIRK was found on the front porch of the unoccupied residence by local law enforcement upon their arrival.

12. On or about April 20, 2021, Your Affiant interviewed CHS2 to obtain additional details about the event that took place with KIRK on or about April 9, 2021. CHS2 informed law enforcement that he/she was inside of the residence when he heard KIRK and CHS1 outside yelling towards each other. CHS2 observed KIRK standing at the end of the yard, near the driveway, with a beer can in his hand. CHS2 advised KIRK to stop yelling because there were kids present and he did not need to be talking the way he was. CHS2 then observed KIRK pull out a handgun, which handgun CHS2 observed to be black or charcoal in color. CHS2 recalled KIRK fired three shots. CHS2 observed KIRK then return back to the unoccupied residence he was known to be working on and sit on the front porch until local law enforcement arrived.

13. On or about April 20, 2021, Your Affiant interviewed CHS3 to obtain additional details about the event that took place with KIRK on April 9, 2021. CHS3 informed law enforcement, he/she was with KIRK at approximately 10 a.m. on or about April 9, 2021, which was before the shooting incident in question. During the time CHS3 and KIRK were together before shooting incident, KIRK and CH3 were shooting a handgun in the yard of the vacant trailer. During the time they spent together on or about April 9, 2021, CHS3 observed KIRK go inside of the vacant residence and retrieve a black 9mm handgun. CHS3 fired the handgun approximately five times while KIRK shot the gun multiple times as well. CHS3 and KIRK were both hired to do repairs on the residences located on the Clay Capel property. CHS3 lived in one of the trailers on the Clay Capel property. KIRK had advised he wanted CHS3 to get on CHS3's roof and find any damage that was needed to be prepared. CHS3 stated that while he was on the roof of his residence, KIRK was going to check the residence of CHS1 and repair a water leak.

Soon thereafter, CHS3 heard yelling while on the roof; CHS3 was unable to understand anything being said due to somebody mowing grass nearby. CHS3 heard several gun shots fired while the argument took place between KIRK and CHS1. CHS3 observed KIRK to be standing in front of CHS3'S residence when he heard the gun shots fired. After the shots were fired, CHS3 observed KIRK to return back to the vacant residence where KIRK was known to be working.

### D.     KIRK's Jail Call Communications with Person 1

14.     After his arrest, KIRK was recorded in several jail calls talking with an individual referred to in this Affidavit as Person 1. (Based upon the investigation, Person 1 is believed to be KIRK's girlfriend.) In several recorded jail conversations involving KIRK and Person 1, KIRK and Person 1 expressed concern for an item related to KIRK's arrest that both thought to be inside of the unoccupied trailer; during the course of the calls, KIRK and Person 1 expressed a need to locate and recover the item. Based on the context of the calls, and upon training and experience, Your Affiant submits that the item KIRK and Person 1 were discussing was the firearm that KIRK possessed and discharged on or about April 9, 2021.

15.     For example, in a jail call on or about April 13, 2021, KIRK and Person 1 discussed KIRK's involvement in the investigation. By this time, KIRK was not aware of the State of Ohio charges pending against him for Possession of a Weapon by a Felon. KIRK stated, "the only thing that matters is that thing, ya know." Person 1 responded with, "right, I know[] what you are talking about." KIRK continued, "I mean, that would be the issue right there. I known for a fact it's 250 or 3—I mean, I might even be able to get 5 if I get the right person. That thing's gotta get out of that trailer, but it's hot, you known what I mean, it's loaded. If you think we might be able to get this done just drop off 50 . . . . If it gets done, then don't drop off nothing. Just drop my glasses off. You drop my glasses off, then I know[] the drill."

16.     On or about April 14, 2021, KIRK and Person 1 again were talking on a jail call about the item inside of the trailer. During the conversation, KIRK stated, "this is [expletive] ridiculous . . . . I don't give a [expletive] was a gun involved or not. It doesn't matter. Nobody was shot at. Nobody. They didn't find the gun."

17.     On or about April 15, 2021, KIRK and Person 1 again were talking on a jail call about the gun inside of the unoccupied trailer, and were discussing how the property owner needed to be contacted in order to get the gun out of the trailer. KIRK stated, "I still need to talk to [the property owner] anyway. I gotta make arrangements to get that thing outta there. I guess I'll talk to [the property owner] later about getting that thing out of there . . . . Anything about the electric getting turned on yet? . . . . That thing's gonna have to get out of there before they do that."

18.     Later on or about April 15, 2021, KIRK and Person again talked on a jail call about the gun being recovered from the trailer. Person 1 stated to KIRK, "Well, they showed up at [the property owner's] for the search warrant for the trailer." KIRK responded, "so did they find it?" Person 1 stated, "yup."

19.     Later on or about April 15, 2021, KIRK and Person 1 discussed on a jail call the new charges KIRK would be facing now that the gun had been recovered by law enforcement. KIRK stated, "They're gonna hit me with a firearm by a felon now—that's an automatic 3 years.

My fingerprints are on the god damn gun. They can't prove I shot at nobody 'cause I didn't shoot at nobody."

20. Later on or about April 15, 2021, KIRK and Person 1 continued to discuss on a jail call the firearm charge KIRK faced. KIRK stated, "I think I can beat the weapons charge . . . . I wasn't caught with nothing. They went on the premises afterwards, four days later, the premises was unlocked and everything else, and [the property owner] didn't let them in. They served [the property owner] a warrant and they went in there. It was already unlocked. So, how'd it get there? You know what I mean? . . . . I don't live there, my shit's not there . . . . so I think I might be able to beat it. I don't know. Then again, if I would have been out, that other charge wouldn't have came around."

21. Based on the forgoing factual information, Your Affiant submits there is probable cause to believe that Raymond J. KIRK has violated 18 U.S.C. § 922(g)(1), that is, possession of a firearm by an individual previously convicted in any court of a crime punishable by imprisonment for a term exceeding one year. Your Affiant therefore respectfully requests this court issue a criminal complaint and arrest warrant regarding KIRK.

*SA E. Travis*

E. Travis Aaron
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 5th day of May, 2021.

Kimberly A. Jolson
United States Magistrate Judge

5